**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diane Klivington-Evans,<br><br>            Plaintiff,<br><br>v.<br><br>PassingYourOBGYNBoards.com, et al.,<br><br>            Defendants. | No. CV-24-02677-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff's *ex parte* application for a temporary restraining order ("TRO") and order to show cause ("OSC") as to why a preliminary injunction should not issue.  (Doc. 2.)  For the following reasons, the TRO application is granted as to Defendants, denied without prejudice as to nonparty GoDaddy, Inc. ("GoDaddy"), and denied as to nonparty Domains by Proxy, LLC ("Domains by Proxy").

### RELEVANT BACKGROUND

On October 4, 2024, Plaintiff filed a verified complaint *in rem*, alleging cybersquatting by Defendants <PassingYourOBGYNBoards.com> and unknown John Does.  (Doc. 1.)  The complaint alleges that Plaintiff has been running a business since 2012 via her company "PassingYourOBGYNboards.com LLC and its successor company PASSINGYOUROBGYNBOARDS LLC" ("the Company"), which provides physicians with "test preparation services and goods to study for their oral OB/GYN medical boards to become board certified obstetricians and gynecologists."  (*Id.* ¶ 2.)  "Since at least as early as December 17, 2014, until very recently," Plaintiff has used the domain name

<PassingYourOBGYNBoards.com> ("the Domain Name") to conduct her business, but due to a missed payment caused by identity theft and the resulting closure of her credit card, Plaintiff's registration of the Domain Name lapsed.  (*Id.* ¶¶ 3-4, 54-64.)  During the lapse—at some point between July 29, 2024 and August 4, 2024—one or more unknown cybersquatters registered the Domain Name, "loaded the webpage with malware and viruses," and "used the Domain Name to reset passwords to other accounts linked to the Domain Name, including accounts at Shopify, PayPal, and Zoom."  (*Id.* ¶¶ 5-6, 65-68.) Nonparty GoDaddy is the registrar of the Domain Name.  (*Id.* ¶¶ 18, 66.)  Nonparty Domains by Proxy provides a mailing address "for registrants who wish to keep their information private on GoDaddy," and this mailing address is the contact information currently listed for the Domain Name.  (*Id.* ¶ 22.)

On the same day the complaint was filed, Plaintiff filed the pending *ex parte* application for a TRO/OSC (Doc. 2), a memorandum in support thereof (Doc. 5), and two supporting declarations (Docs. 3, 4).  Plaintiff seeks a TRO enjoining Defendants from continued use of the Domain Name and associated malfeasance (Doc. 2-1 at 1-2, (1)(A)-(D)) and an OSC as to why a preliminary injunction against Defendants should not issue (*id.* at 3).  Plaintiff also seeks a TRO directing GoDaddy to place a registry hold on the Domain Name and transfer it back to Plaintiff (*id.* at 2, (2)(A)-(C)) and a TRO directing Domains by Proxy to disclose the identities and contact information for the current registrant(s) of the Domain Name (*id.* at 2, (3)).  Finally, Plaintiff seeks leave to serve process via alternative means.  (Doc. 2-1 at 2-3.)

## ANALYSIS

I.   TRO Requests

   A.   **Legal Standard**

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action.  There are two types of injunctions available under Rule 65: TROs and preliminary injunctions. Although both are governed by the same substantive standards, *see Stuhlbarg Int'l Sales*

*Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), a TRO may be issued without notice to the adverse party.  More specifically, under Rule 65(b)(1), the Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if two requirements are met: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  The Ninth Circuit has cautioned that "very few circumstances justify the issuance of an ex parte TRO."  *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

On the merits, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (cleaned up).  *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.") (citation omitted).  "A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  "But if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up).  Under this "serious questions" variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another."  *Lopez*, 680 F.3d at 1072.  Regardless of which standard applies, the movant "carries the burden of proof on each element of either test."  *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

### B.    TRO As To Defendants

One of the threshold requirements under Rule 65(b)(1) when a party seeks an *ex parte* TRO is that the "movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Here, Plaintiff's counsel has provided a detailed declaration that establishes that notice has been attempted by the only means available, as the Domain Name registrants have taken affirmative steps to conceal their identities and contact information.  (Doc. 4.)  Furthermore, as stated in the memorandum in support of the TRO motion, "[u]nknown cybersquatters in possession of the *in rem* Defendant Domain Name has already moved registrars to, upon information and belief, prevent Plaintiff from recovering the Domain Name. . . .  If given the opportunity, the cybersquatters may attempt to move the Domain Name to a registrar outside of the United States."  (Doc. 5 at 12.)  The Court is satisfied that notice should not be required under these circumstances.

The other threshold requirement under Rule 65(b)(1) is that the movant come forward with "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  That requirement is satisfied here by the verified complaint (Doc. 1) as well as Plaintiff's declaration (Doc. 3).  The facts in those documents demonstrating harm to the Company's goodwill establish both the irreparability and immediacy of the harm that Plaintiff will suffer in the absence of a TRO.  *Cf. Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming district court's finding that second *Winter* factor was satisfied in copyright infringement action, even though "damages could be calculated based on [lost] licensing fees," because other forms of harm caused by the challenged conduct, including "loss of goodwill," "cannot readily be remedied with damages").

Turning to the merits, the first *Winter* factor addresses the likelihood of success on the merits.  "In order to combat . . . bad-faith registration or use of domain names, Congress enacted the ACPA [Anticybersquatting Consumer Protection Act] as a supplement to the

federal trademark statute." *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 295 (2d Cir. 2002). "Cybersquatting can be understood as registering a domain name associated with a protected trademark either to ransom the domain name to the mark holder or to divert business from the mark holder." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 550 n.3 (9th Cir. 2013). "The [ACPA] establishes civil liability . . . where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (cleaned up).

Here, the verified complaint and supporting declarations are easily sufficient to establish a likelihood of success on the first (Defendants "registered . . . or used a domain name") and third (bad-faith intent to profit) elements of Plaintiff's ACPA claim. *See generally Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) ("Congress has enumerated nine nonexclusive factors for courts to consider in determining whether bad faith exists. We need not, however, march through the nine factors seriatim because the ACPA itself notes that use of the listed criteria is permissive. Instead, the most important grounds for finding bad faith are the unique circumstances of the case.") (cleaned up). Plaintiff has also established a likelihood of success on one component of the second element, which is that the Domain Name be "identical or confusingly similar" to the mark owned by Plaintiff (*i.e.*, PASSING YOUR OBGYN BOARDS).

The only debatable question is whether the mark owned by Plaintiff is a "protected" mark, as also required to satisfy the second element. Plaintiff's theory is that she possesses a "common law trademark" in the Company's name. (Doc. 5 at 6.) "To establish enforceable common law trademark rights within a geographical area, a plaintiff must prove that (1) it was the first to use a mark, and (2) it has established legally sufficient market penetration. Additionally, a plaintiff must show continuing use of the mark—that is, use without interruption." *PragmaticPlay Int'l Ltd. v. Agenpragmaticplay.live*, 2024 WL 113306, *5 (D. Ariz. 2024) (cleaned up). *See also Hanginout, Inc. v. Google, Inc.*, 54

F. Supp. 3d 1109, 1118 (S.D. Cal. 2014) ("To establish common law trademark rights in the absence of federal registration, a plaintiff must plead and prove that it is the senior user of the mark with sufficient market penetration to preclude the defendant from using the mark in a specific geographic market. . . .  [T]wo independent determinations—seniority of use and market penetration—both . . . must be satisfied in the absence of federal registration.") (citations omitted).  Here, the verified complaint establishes that Plaintiff, for about a decade, continuously ran a business known as "PASSING YOUR OBGYN BOARDS" (the "Mark") (Doc. 1 ¶ 19), "has maintained social media pages on platforms including Facebook, YouTube, Twitter (now X) which prominently display Passing Your OBGYN Boards" (*id.* ¶ 39), and has used the Mark "on and in the Domain Name, blogposts, the Company's Shopify and PayPal storefronts, in marketing materials, on social media accounts, in written communications to customer and potential customers, and on invoices" (*id.* ¶ 40).  "Approximately 15,000 to 20,000 physicians have used the Company's services and goods to pass their medical boards." (*Id.* ¶ 45.)  Plaintiff's business generates approximately $53,000 to $110,000 in profit per year. (*Id.* ¶ 52.)  Plaintiff also "founded PassingYourOBGYNboards.com LLC" in 2011. (Doc. 3 ¶ 2.)  These facts are sufficient to establish a likelihood of success on, and at a minimum serious questions going to the merits of, Plaintiff's claimed entitlement to a common law trademark.  *PragmaticPlay Int'l, Ltd.*, 2024 WL 113306 at *5 ("Here, taking the Complaint's factual allegations as true, Plaintiff has used its PRAGMATIC PLAY word mark as part of its domain name since 2015 and has actively marketed its online goods and services under both the word and composite marks since 2016.  Plaintiff's continual marketing of its games and services using such marks has [led] to significant consumer and industry recognition.  This is sufficient to show that Plaintiff has common law trademark rights in the PRAGMATIC PLAY marks predating its 2021 PTO registrations.").  Thus, Plaintiff has made a sufficient showing as to the first *Winter* factor.

The second *Winter* factor addresses the likelihood of irreparable harm in the absence of preliminary relief.  The verified complaint alleges that "[t]hrough referral sources,

Plaintiff has been notified that there are issues with the Domain Name being loaded with viruses, and that persons referred to Plaintiff through the website, experienced issues.  After personally reviewing the Domain Name, the computer of at least one referral source was infected with a virus."  (*Id.* ¶ 68.)  This is sufficient to establish irreparable harm to goodwill.  *Disney Enterprises,* 869 F.3d at 866.

The third *Winter* factor addresses the balance of equities.  The balance tips overwhelmingly in Plaintiff's favor here, where (at least on this record) Plaintiff is an innocent victim of cybersquatting while Defendants are calculated cybersquatters who have taken steps to hide their identities and infect the computers of Plaintiff's prospective clients with malware.

The fourth *Winter* factor addresses the public interest.  This factor favors Plaintiff for the same reasons.

Finally, the Court agrees with Plaintiff (Doc. 5 at 12) that a bond is unnecessary.

Thus, Defendants are temporarily restrained for 14 days.  Fed. R. Civ. P. 65 (b)(2).

C.      **TRO As To GoDaddy**

Plaintiff is not entitled to obtain a TRO against non-party GoDaddy at this early juncture because the allegations are insufficient to establish that GoDaddy is "in active concert or participation" with Defendants.  *See. e.g., Whaleco Incorporated v. Arslan*, 2024 WL 342459, *2 (D. Ariz. 2024) ("Whaleco's proposed TRO . . . goes too far . . . [because] much of the proposed TRO is directed toward non-party Namecheap Incorporated, the domain name registrar for the websites at issue.  This Court previously has rejected the argument that domain registrars necessarily act in concert or participation with a client who uses a domain to commit intellectual property violations.  Although a domain registrar who receives notice of [a TRO directed against the Defendants] cannot thereafter take actions that facilitate an effort by Defendants to evade or violate the TRO, the Court remains convinced that it lacks authority to order a non-party domain registrar to act before it even has notice of the injunction, and before it has been asked by any defendant to facilitate a potential violation of that order.  The Court therefore denies Whaleco's motion for a TRO

to the extent that it asks the Court to order Namecheap or other non-party domain registrars to act.") (citations omitted); *Fornix Holdings LLC v. Unknown Party*, 2022 WL 992546, *2 (D. Ariz. 2022) ("Plaintiffs' argument fails because they do not allege that . . . Namecheap knew of the defendant's allegedly infringing conduct and nevertheless continued to provide services that facilitated that infringement.  They cannot be said to be aiding and abetting the defendant, and thus, the Court cannot bind them to a TRO absent them being named parties.").

The TRO as to GoDaddy is denied without prejudice.  If necessary, Plaintiff may renew this request, either by motion or stipulation, *see, e.g.*, *Wavve Americas Inc. v. Unknown Party*, 2024 WL 4120365, *4 (D. Ariz. 2024) ("Under the circumstances and in light of Namecheap's actual awareness of this action and willingness to be bound, the Court sees little harm in binding Namecheap."), although it is possible that GoDaddy, upon being shown this order, will voluntarily act to ensure that it cannot be found, through continued provision of services to Defendants, to be "in active concert or participation" with Defendants, in which case nothing further would be needed from the Court.

### D.    **TRO As To Domains By Proxy**

Plaintiff has not demonstrated that a TRO is necessary to obtain information from Domains by Proxy.  Instead, the Court construes the application as a request for leave to conduct early discovery, which is granted.  Plaintiff may attempt to obtain the information sought via the procedures set forth in Rule 45 of the Federal Rules of Civil Procedure.  *See generally J.P. Morgan Securities LLC v. Chamberlain*, 2022 WL 4094151, *2 (D. Ariz. 2022) (discussing the standards governing a request to conduct expedited discovery).

### II.    <u>Service</u>

"The ACPA, which was adopted in 1999, provides two different methods for the owner of a trademark or service mark to seek the transfer of an Internet domain name that is identical or confusingly similar to the owner's mark."  *Hi-Rise Tech., Inc. v. Amatuerindex.com*, 2007 WL 1847249, *1 (W.D. Wash. 2007).  "Under 15 U.S.C. § 1125(d)(1)—which is sometimes referred to as 'paragraph 1' of the ACPA—the owner

of a mark may bring an in personam action against a person who registers, traffics in, or uses the domain name." *Id.* "In the alternative, 15 U.S.C. § 1125(d)(2)—also known as 'paragraph 2' of the statute—authorizes the owner of the mark to bring an in rem action against the domain name itself, provided that the in rem action is brought in the judicial district in which the domain name registrar or registry is located[1] and that other conditions required by the statute are satisfied." *Id.* "Paragraph 2" provides in relevant part:

> (A)  The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—
>
>      (i)   the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and
>
>      (ii)  the court finds that the owner—
>
>            (I)   is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
>
>            (II)  through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—
>
>                  (aa)  sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>
>                  (bb)  publishing notice of the action as the court may direct promptly after filing the action.
>
> (B)  The actions under subparagraph (A)(ii) shall constitute service of process.

---

[1] Plaintiff alleges that "GoDaddy is the registrar of Defendant Domain Name and GoDaddy is located within the U.S. District Court for the District of Arizona." (Doc. 1 ¶ 18.)

1   15 U.S.C. § 1125(d)(2)(A)-(B).

2        The Court previously determined in a cybersquatting case where, as here, "the

3   registrant of a domain name has concealed his or her identity by registering the domain

4   name under a fictitious name and has made himself or herself impossible to find . . . and

5   there is no way to know the city or even the country in which he or she might reside," that

6   "there is simply no manner of publication that reasonably could be expected to reach the

7   registrant.  Impossibility is reason enough for the Court to decline to direct publication.

8   The Court further notes that the registrant's efforts to make himself or herself unfindable

9   cut against imposing upon Plaintiff a burdensome publication requirement." *Ent. USA Inc.*

10  *v. Baldinsky*, 641 F. Supp. 3d 794, 800-01 (D. Ariz. 2022).

11       The statutory definition of "due diligence" has therefore been satisfied, as Plaintiff's

12  counsel sent a notice and intent to proceed by both email to abuse@godaddy.com and by

13  first-class mail at Domains By Proxy, LLC, 100 S. Mill Ave, Suite 1600, Tempe Arizona

14  85281, which are the postal and email address provided by the registrant to the registrar.

15  (Doc. 1 ¶¶ 20-23; Doc. 4 ¶¶ 7-9.)  Plaintiff's counsel also notified the unknown registrant(s)

16  via an alternative process.  (Doc. 1 ¶¶ 24-29.)

17       Thus, service of process is deemed effected.

18  III.   <u>Order To Show Cause</u>

19       The Court orders Defendants to show cause why a preliminary injunction should

20  not issue by filing a memorandum in opposition, not to exceed 10 pages, by October 18,

21  2024.  Upon receiving a memorandum in opposition from Defendants, the Court will set a

22  preliminary injunction hearing at the earliest possible date (and will, if necessary, extend

23  the duration of the TRO for an additional 14 days).  If no memorandum in opposition is

24  filed, the TRO will convert into a preliminary injunction without further order from the

25  Court.

26       …

27       …

28       …

- 10 -

Accordingly,

**IT IS ORDERED** that service of process is deemed effected.

**IT IS FURTHER ORDERED** that Plaintiff may pursue expedited discovery from Domains By Proxy to ascertain Defendants' identities and contact information.

**IT IS FURTHER ORDERED** that Plaintiff's request for an *ex parte* TRO (Doc. 22) as to Domains by Proxy is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's request for an *ex parte* TRO (Doc. 22) as to GoDaddy is **denied without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's request for an *ex parte* TRO and OSC (Doc. 22) as to Defendants is **granted**.

**IT IS FURTHER ORDERED** that Defendants shall show cause why a preliminary injunction should not issue by filing a memorandum in opposition, not to exceed 10 pages, by **October 18, 2024**.  Upon receiving a memorandum in opposition from Defendants, the Court will set a preliminary injunction hearing at the earliest possible date (and will, if necessary, extend the duration of the TRO for an additional 14 days).

**IT IS FURTHER ORDERED** that, for a period of 14 days, Defendants are prohibited from:

1. creating, operating, owning, overseeing, or otherwise exercising control over any infringing website, web page, or parked page, incorporating, including, or otherwise displaying the trademark PASSING YOUR OBGYN BOARDS; and

2. registering, using, linking, transferring, selling, exercising control over, or otherwise owning the domain name or any other domain name that uses "PassingYourOBGYNBoards" or Plaintiff's name; and

3. effecting any assignment or transfer, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding any of the prohibitions set forth in this Order; and

4. impersonating the Company, or otherwise interfering with the Company's social media accounts, customers, e-commerce accounts, point of sale accounts and/or

payment platforms.

**IT IS FURTHER ORDERED** that if Defendants fail to respond to the OSC by **October 18, 2024**, the restrictions above shall constitute a preliminary injunction that shall remain in effect throughout the pendency of this litigation.

**IT IS FURTHER ORDERED** that Plaintiff shall serve Defendants with this order via email to abuse@godaddy.com and by first-class mail to Domains By Proxy, LLC, 100 S. Mill Ave, Suite 1600, Tempe, Arizona 85281 and file a notice on the docket when service of this order is completed.

Dated this 8th day of October, 2024.

_____
Dominic W. Lanza
United States District Judge